UNITED STATES of America,

v.

**Nima LAMA, Lalit Dewan, Narayan Gurung and Argin Kumar, Defendants.**

**No. S 85 Crim. 568.**

United States District Court, S.D. New York.

July 29, 1985.

Rudolph W. Giuliani, U.S. Atty. for S.D. of N.Y., New York City, for U.S. of America; Robert L. Folks, Asst. U.S. Atty., of counsel.

Howard Mulholland, New York City, for defendant Nima Lama.

Robert P. Leighton, New York City, for defendant Lalit Dewan.

Roland Thau, New York City, for defendant Narayan Gurung.

Leonard J. Levenson, New York City, for defendant Argin Kumar.

## OPINION

EDWARD WEINFELD, District Judge.

Nima Lama, Lalit Dewan, Narayan Gurung, and Argin Kumar are charged in a one-count indictment with conspiracy to possess with intent to distribute and to

distribute heroin illegally imported into the United States from Nepal. Lama and Dewan move to suppress property seized and statements made following their arrests on June 3, 1985. Lama moves to suppress property seized in the search of his hotel room pursuant to a consent signed by him on the evening of June 3; Dewan moves to suppress property taken from him in the search of his person subsequent to arrest, and for the suppression of the statements he made to agents of the Drug Enforcement Administration on June 3. Both defendants claim that the agents lacked probable cause to effect their arrests.

Co-defendant Kumar was arrested by a DEA agent on May 29, 1985 after 4.8 pounds of heroin were discovered in Kumar's luggage upon his arrival at the San Francisco International Airport from Tokyo, Japan. Kumar admitted to the illegal importation of the heroin for purposes of distribution in the United States and agreed to cooperate with government agents in making a controlled delivery of the heroin as instructed by his source of supply. He said that he had received the heroin, along with $3,000 in cash, from Mr. Hom Gurung, in Katmandu, Nepal; that Mr. Gurung instructed him to go to New York and stay at either the Milford Plaza Hotel or the Ramada Inn, where he would be contacted by someone named "Narayan," to whom he was to deliver the heroin upon payment to him of another $3,000.

On June 1, 1985, under the supervision of DEA agents, Kumar checked into room 1835 of the Milford Plaza Hotel; the agents established a monitoring post in the adjacent room, 1836. In the afternoon of June 3, not having heard from "Narayan," Kumar placed a telephone call to Hom Gurung in Katmandu and informed him that he was staying at the Milford Plaza Hotel; Hom Gurung advised him to remain there and await a call. At approximately 7 p.m., Kumar received a telephone call from defendant Dewan, who arranged to meet Kumar at the Milford Plaza and arrived about a half hour later. When he entered Kumar's room, Dewan spoke to Kumar in Nepalese; DEA agents testified that Kumar later told them Dewan had asked if Mr. Lama had arrived yet. After this brief conversation, DEA agents stepped in and arrested Dewan.

About half an hour after Dewan was arrested, at 8:15 p.m., defendant Narayan Gurung telephoned Kumar in room 1835 and asked him to come down to the lobby. Kumar did so, and met Gurung and defendant Lama. DEA agents posted in the lobby then arrested Lama and Gurung. All defendants were taken to room 1835 for questioning; agents testified that at this time they were informed of their constitutional rights under *Miranda v. Arizona.*[1] (Dewan, who had been in custody for thirty minutes or so before that time, was not questioned in the interval). In the questioning which followed, defendant Dewan made verbal statements to the arresting agents which he now seeks to suppress. He and Lama were also presented with printed forms consenting to a search of their hotel rooms. DEA agents testified that each defendant was read the statement of his right to refuse consent to search, that each indicated that he understood his rights, and that both signed the forms. Later in the evening the defendants were taken to DEA offices where they were presented with pen and paper and asked to make written statements. Both men wrote and signed statements in English; defendant Dewan testified at the hearing that he was not instructed or directed in any way as to the content of his statement.

## PROBABLE CAUSE

Both defendants challenge the sufficiency of the evidence as to probable cause; the court finds that the arresting agents had probable cause for both arrests.

*Dewan*

■ Dewan offers a complex narrative explaining his presence at the Milford Plaza; he contends that an unknown individual

1. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

in Katmandu, whom Dewan called to leave a message for Dewan's brother, asked Dewan to go to the Milford Plaza to meet the unknown party's own brother, who might be in some sort of trouble. On this mission of good-fellowship, Dewan claims, he called Kumar and arranged to meet with him at room 1835. Nonetheless, the information supplied by Kumar as to his importation of the heroin and the plans for its subsequent delivery in New York City to a person named Narayan unknown to him, from whom he was to receive $3,000, along with the call to his source of supply in Katmandu, who instructed him to remain at the hotel and await a call, followed soon thereafter by Dewan's call and appearance at the Milford Plaza established probable cause to believe that Dewan was a participant in the ongoing conspiracy. Indeed, there was an abundance of facts providing probable cause for his arrest.

*Lama*

Defendant Lama objects to his arrest as having been predicated on his mere presence in the lobby of the Milford Plaza Hotel; when arrested, he claims, he was walking behind defendants Gurung and Kumar, having spoken to no one and committed no suspicious acts.

 In the context of the controlled delivery of heroin, the DEA agents had a more substantial basis for Lama's arrest. Kumar had been told he would deliver his heroin to "Narayan"; after the arrest of Dewan, defendant Narayan Gurung called from the lobby, announced himself as Narayan and asked Kumar to meet him. Defendant Lama was in the company of Gurung when the telephone call was made; Dewan, on arriving at Kumar's room, asked if Lama had arrived. The combination of events commencing with Dewan's telephone call to Kumar in room 1835, followed soon thereafter by Dewan's appear-

ance there and their discussion, including Dewan's inquiry if Lama had yet arrived, along with the telephone call from Gurung asking Kumar to come to the lobby and Lama's presence there in evident association with Gurung was sufficient to establish that Lama also was a participant in the conspiracy. As our Court of Appeals has stated, "[t]he essence of probable cause is a reasonable, objective basis for *belief* in a suspect's guilt, although not necessarily *proof* of guilt beyond a reasonable doubt.... As such, probable cause to arrest is not limited to those instances where the arresting officer has acquired evidence which would be sufficient to convict the suspect at trial."[2] Facts sufficient to establish probable cause are not negated simply because they may also be consistent with innocence; the arresting officer is not required to exclude all exculpatory possibilities before making the arrest.[3] Upon the totality of the evidence presented, the court finds that the arresting agents had probable cause to believe that there was an ongoing conspiracy to possess, with intent to distribute, heroin that had been illegally imported into the United States, and that each defendant, by his acts and conduct in all the surrounding circumstances preceding and attendant to arrest, showed himself a willing and intentional participant in the furtherance of the conspiracy.

### MOTIONS TO SUPPRESS PROPERTY AND STATEMENTS

Both defendants have made motions to suppress: Dewan moves to suppress property taken from him at the time of arrest, and verbal and written statements made subsequent to arrest; Lama moves to suppress property taken in the search of his hotel room.

*Dewan*

Dewan objects to the search of his person incident to arrest on the ground that

---

**2.** *United States v. Webb,* 623 F.2d 758 (2d Cir. 1980) (emphasis in original); *cf. Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983) (probable cause "means less than evidence which would justify condemnation").

**3.** *United States v. Webb,* 623 F.2d at 761; *United States v. Rodriguez,* 532 F.2d 834, 838 (2d Cir. 1976).

the arrest was effected without probable cause. Since the court has found that the agents had probable cause for his arrest, the search of Dewan's person was justified.

■ Defendant Dewan further claims that he was subjected to physical abuse and psychological coercion by the arresting agents, and that his oral and written statements reflect not the truth, but rather his concern with "saving his life." The DEA agents denied that force or coercion was brought to bear upon either movant, and further testified that their statements were made freely and voluntarily. Dewan's specific assertions of mistreatment are not only denied by the officers; they are also contradicted by physical evidence. Dewan testified at the hearing that agents threw him against the wall, opening a cut in his forehead from which he bled "a little bit." He also testified that agents questioning him at the Milford Plaza alternately asked him questions and banged his head against the wall. The result of this process, he testified, was "a slight swelling." Photographs of Dewan taken at DEA offices after his arrest and the alleged incidents of mistreatment show no marks of any kind, whether of wounds, bleeding, or swelling on the forehead and face of the defendant. Based upon the totality of the evidence and the demeanor of the witnesses, the court accepts the testimony of the agents; Dewan has failed to present credible evidence of any physical or psychological coercion requiring the suppression of statements made to the arresting officers.

Dewan's further claim that he was unable to comprehend his rights under *Miranda* because he does not understand English is dealt with below.

*Lama*

■ Defendants Lama and Dewan claim that they do not speak English; an interpreter was provided for them at the suppression hearing. Indeed, they claim that their asserted ignorance of English prevented them from comprehending their rights or giving meaningful consent to the searches carried out subsequent to their arrests. The arresting agents, on the other hand, testified that throughout the evening of June 3 the defendants conversed with the agents in English and gave verbal indications of their comprehension of their rights and of the meaning of the documents they were asked to sign. DEA agents testified that neither defendant ever asked for an interpreter; defendant Lama, when offered an interpreter, declined. Moreover, the statements written by defendants at the offices of the DEA on the evening of June 3 are in English; they demonstrate defendants' substantial if imperfect grasp of the language. Dewan is a second-year student at a Nepalese law school and acknowledged that he had studied English in high school preparatory to his admission to the law school. The court is satisfied that defendants Dewan and Lama were fully aware of the circumstances of their detention, had been informed of their rights both with respect to their detention and to the requested consent to search, and freely gave their knowing and informed consent to the search of their hotel rooms.

Accordingly, both motions are denied. So ordered.